# EXHIBIT A



**null / ALL**
**Transmittal Number: 20796025**
**Date Processed: 12/06/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Diane Wiest<br>Arthur J. Gallagher & Co.<br>2850 Golf Rd<br>Fl 8<br>Rolling Meadows, IL 60008-4050 |
| **Electronic copy provided to:** | Andrew Sullivan<br>Marnie Navarro |

| | |
|---|---|
| **Entity:** | Arthur J. Gallagher & Co.<br>Entity ID Number  0504269 |
| **Entity Served:** | Arthur J. Gallagher & Co. |
| **Title of Action:** | Richard Winet vs. Arthur J. Gallagher & Co. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | San Diego County Superior Court, CA |
| **Case/Reference No:** | 37-2019-00062836-CU-WT-CTL |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 12/04/2019 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Aaron C. Hanes<br>760-758-4261 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/25/2019** at 12:27:14 PM

Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
Arthur J. Gallagher & Co.; and DOES 1-50, inclusive

YOU ARE BEING SUED BY PLAINTIFF:

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Richard Winet

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):*
37-2019-00062836-CU-WT-CTL

Superior Court of California
330 West Broadway
San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Aaron C. Hanes 211246 Winet Patrick Gayer Creighton & Hanes
1215 W. Vista Way (760) 758-4261
Vista, CA 92083

DATE: 11/26/2019
*(Fecha)*

Y. Bahena

Clerk, by         V. Bahena         , Deputy
*(Secretario)*                       *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

   Arthur J. Gallagher & Co.

3. ☒ on behalf of *(specify):*
   under: ☒ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 12/4/19

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
CEB Essential Forms
ceb.com
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Aaron C. Hanes 211246<br>Winet Patrick Gayer Creighton & Hanes<br>1215 W. Vista Way<br>Vista, CA 92083<br>   TELEPHONE NO: (760) 758-4261   FAX NO: (760) 758-6420<br>ATTORNEY FOR *(Name):* Plaintiff Richard Winet | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**11/25/2019** at 12:27:14 PM<br><br>Clerk of the Superior Court<br>By Vanessa Bahena, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego County
  STREET ADDRESS: 330 West Broadway
  MAILING ADDRESS: Same
  CITY AND ZIP CODE: San Diego, CA 92101
  BRANCH NAME: Central District

CASE NAME: Winet v. Gallagher & Co.

| CIVIL CASE COVER SHEET<br>[X] Unlimited   [ ] Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br><br>[ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: 37-2019-00062838-CU-WT-CTL |
|---|---|---|
| | | JUDGE: Judge Ronald L. Styn<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
(Cal. Rules of Court, rules 3.400-3.403)
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Ten
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 25, 2019

AARON C. HANES
    (TYPE OR PRINT NAME)                            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CEB Essential Forms
ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/25/2019** at 12:27:14 PM
Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

1 | RANDALL L. WINET (State Bar No. 116384)
AARON C. HANES (State Bar No. 211246)
2 | WINET PATRICK GAYER CREIGHTON & HANES
1215 WEST VISTA WAY
3 | VISTA, CALIFORNIA 92083-6227
Telephone: (760) 758-4261
4 | Email: rwinet@wpgch.com
    ahanes@wpgch.com
5
Attorneys for Plaintiff, RICHARD WINET
6

7

8

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | COUNTY OF SAN DIEGO, CENTRAL DISTRICT

11

12 | RICHARD WINET, an individual,          | CASE NO. 37-2019-00062836-CU-WT-CTL
                                             ACTION DATE:
13 |     Plaintiff,                         | I/C JUDGE:
14 |
    | v.                                    | **COMPLAINT FOR DAMAGES FOR:**
15 |
    | ARTHUR J. GALLAGHER & CO.; and DOES   | **1. BREACH OF CONTRACT;**
16 | 1-50, Inclusive.                        | **2. DISCRIMINATION AND**
    |                                        | **HARASSMENT IN VIOLATION OF**
17 |     Defendants.                        | **FEHA;**
    |                                        | **3. FAILURE TO PREVENT**
18 |                                        | **HARASSMENT AND**
    |                                        | **DISCRIMINATION IN VIOLATION OF**
19 |                                        | **FEHA;**
    |                                        | **4. RETALIATION IN VIOLATION OF**
20 |                                        | **CAL. LABOR CODE §1102.5**
    |                                        | **5. VIOLATION OF ERISA 29 U.S.C.**
21 |                                        | **§510;**
    |                                        | **6. WRONGFUL TERMINATION IN**
22 |                                        | **VIOLATION OF PUBLIC POLICY;**
    |                                        | **7. VIOLATION OF LABOR CODE §§**
23 |                                        | **201, 203;**
    |                                        | **8. VIOLATION OF THE ADA;**
24 |                                        | **9. FRAUD;**
    |                                        | **10. NEGLIGENCE/NEGLIGENT**
25 |                                        | **MISREPRESENTATION.**

26 | Plaintiff RICHARD WINET (hereinafter WINET), by and through his attorneys, alleges

27 | against Defendants, ARTHUR J. GALLAGHER & CO., and DOES 1-50, as follows:

28 | ///

1

**COMPLAINT FOR DAMAGES**

## JURISDICTION AND THE PARTIES

1.      Jurisdiction and venue before this Court are proper under California Code of Civil Procedure § 410.10. The unlawful practices, events, breaches, and omissions complained of herein occurred in San Diego County, in the State of California. Further, the compensation agreement alleged in this Complaint was entered into and to be performed in the County of San Diego, in the State of California. Additionally, the health plan and benefits owed to WINET were administered, accrued, due, and owed to WINET in San Diego County.

2.      Plaintiff WINET is, and at all times mentioned herein was, an individual residing in the County of San Diego with his domicile located in the State of California. WINET was 60 years old at the time of his termination. WINET was an employee of McGregor & Associates (hereinafter "McGREGOR") beginning June 12, 2017 and remained an employee until McGregor & Associates was sold to Arthur J. Gallagher & Co. Insurance Brokers of California, Inc. (hereinafter "GALLAGHER"). WINET became an employee of GALLAGHER with the sale of McGREGOR. WINET was an employee of GALLAGHER at the time of his termination on June 27, 2019.

3.      Defendant GALLAGHER is, and at all times mentioned herein was, a corporation doing business in the State of California, with significant contacts within and doing business in the San Diego County. Defendant GALLAGHER's principal place of business is Rolling Meadows, Illinois. At all times mentioned herein, GALLAGHER employed more than 20 employees on a typical business day during the preceding calendar year.

4.      The true names and capacities, whether individual corporate or representative, or otherwise, of Defendants named in this Complaint as "DOES 1-50" are unknown to Plaintiff at this time, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of Defendants DOES 1-50 at the time such identities become known to him.

5.      Plaintiff WINET is informed and believes, and thereon alleges, that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged, and that

///

2

**COMPLAINT FOR DAMAGES**

1  Plaintiff's injuries and damages are directly, proximately, and/or legally caused by defendants and
2  all of their acts.

3      6.    Plaintiff believes and thereon alleges that each of these defendants named herein as
4  DOES 1-25 are the agents, employers, representatives, or employees of the other named
5  defendants and when performing the acts alleged herein, were acting within the scope of their
6  agency, employment and/or representative capacity and are therefore responsible for the acts
7  complained of herein.

8  **GENERAL ALLEGATIONS**

9      7.    McGREGOR advertised itself as one of California's leaders in health benefits
10  administration. Since 1993, McGREGOR had been providing flexible and customized solutions to
11  trusts and individual employers in both public and private sectors. Its administrative solutions are
12  adaptable across a wide variety of clients, including educational institutions, public agencies,
13  construction organizations and retiree medical trusts.

14      8.    One of the main products sold by McGREGOR was California VEBA. The
15  California Schools Voluntary Employees Benefit Association ("VEBA") was started in 1993,
16  through the combined efforts of school superintendents and representatives of both the California
17  Teachers Association ("CTA") and the California School Employees Association ("CSEA").
18  VEBA provides healthcare benefits for education, municipal, and public agency employees. With
19  more than 65 participating employers, and over 135,000 members, this allowed VEBA to keep
20  healthcare premiums low and costs down.

21      9.    WINET was an excellent candidate for the General Manager of Sales position at
22  McGREGOR. At the time of his application, WINET was a Board Member with the La Mesa
23  Spring Valley School District. He had held that position for nearly 19 years. In that position, he
24  had served as President of the Board of the School District, and had connections and
25  communications with superintendents and educators throughout San Diego County. He also had
26  several connections with other persons politically connected throughout San Diego County.
27  WINET had substantial experience in the sales market in San Diego County.

28  ///

3

**COMPLAINT FOR DAMAGES**

10.    WINET was hired by George McGregor of McGREGOR on June 12, 2017, as the General Manager of Sales.

11.    At the time of WINET's hiring, there was a discussion about his salary and commissions that would be paid. He was given the choice of being provided a yearly salary plus a commission of 50 cents per new member per month for VEBA, or being paid a slightly higher yearly salary plus a commission of 25 cents per new member of VEBA per month. On or about August 8, 2017, Plaintiff WINET entered into a compensation agreement with McGREGOR. WINET would be employed as General Manager of Sales for McGREGOR. In consideration for WINET's employment, WINET elected to receive the slightly higher annual salary plus commissions of 25 cents per new member, per month. WINET and McGREGOR agreed that the commissions would continue and be paid for three years, from the date the newly acquired business started.

12.    WINET immediately went to work in marketing himself, McGREGOR and VEBA. He utilized his well-established contacts within the San Diego County school districts, and made calls to superintendents and other persons connected with school districts throughout San Diego County.

13.    One of the districts that WINET had relationships with was the Grossmont Union High School District (GUHSD). WINET explained the benefits and savings that GUHSD could obtain in switching their benefits to VEBA. WINET successfully convinced GUHSD to switch their healthcare benefits to VEBA effective January 1, 2018.

14.    Likewise, WINET had relationships with persons at the Oceanside Unified School District (OUSD). WINET secured all of OUSD'S business, and OUSD switched its entire health benefits to VEBA effective May 1, 2018.

15.    WINET began receiving commissions from McGREGOR for selling VEBA to GUHSD and OUSD. By May of 2018, WINET was already earning approximately $1,500 a month in commissions over and above his salary.

16.    Through WINET's school community connections, he also made contact with San Dieguito Union High School District (SDUHSD) in April of 2018. In April of 2018, WINET and

4

COMPLAINT FOR DAMAGES

1     the VEBA Ombudsman met with SDUHSD personnel to discuss VEBA benefits and the potential

2     transfer of health benefits for certificated and classified employees at SDUHSD.

3          17.     WINET kept in close contact with SDUHSD throughout 2018. The relationship he

4     built paid dividends for McGREGOR and VEBA.

5          18.     WINET was instrumental in the eventual acquisition of SDUHSD's business for

6     both certificated and classified employee unions. Not only had WINET used his relationship with

7     key personnel to make the initial contact with SDUHSD, WINET was also part of the finalist

8     presentation to SDUHSD and introduced key District personnel to McGREGOR team members,

9     Matt Bittner (Director of Operations and Assistant General Manager of California Schools VEBA)

10     and Don Prezioso (Development Manager). By September of 2018, the Certificated Unit of

11     SDUHSD agreed to join VEBA with a start date of January 1, 2019.

12          19.     In June of 2018, George McGregor sold McGREGOR to Defendant

13     GALLAGHER. GALLAGHER is a U.S. based global insurance brokerage and risk management

14     services firm headquartered in Rolling Meadows, Illinois. The company is on the New York Stock

15     Exchange with a symbol of AJG. It is the third largest insurance broker in the world.

16     GALLAGHER holds itself out as one of the world's most ethical companies.

17          20.     As part of the buy out of McGREGOR, George McGregor agreed to serve as the

18     area President for GALLAGHER.

19          21.     The other employees working for McGREGOR were kept as employees of

20     GALLAGHER, and were assured by Mr. McGregor that their jobs were secure and their terms of

21     employment would remain the same. McGREGOR assured WINET that he would receive all

22     commissions for his school district work. Even though the actual purchase of McGREGOR by

23     GALLAGHER did not occur until June of 2018, it was made retroactive to March 1, 2018.

24          22.     WINET entered into an employment agreement with GALLAGHER that provided,

25     among other things, that both GALLAGHER and/or WINET were required to provide 21-days

26     notice of intent ("notice period") to end the employment relationship. According to the agreement,

27     GALLAGHER agreed to continue normal compensation and benefits during the 21-day notice

28     period. The employment agreement further provided that no notice period was required if

1  GALLAGHER terminated an employee during the pendency of a performance improvement plan.

2      23.      Although WINET signed a new employment agreement with the transfer to
3  GALLAGHER, no changes were made to WINET's compensation agreement. WINET continued
4  to receive his commissions for the GUHSD and OUSD sales. WINET enrolled in the health
5  benefits plan offered by GALLAGHER. HealthSmart Benefits Solutions (hereinafter
6  HEALTHSMART) was the plan administrator for GALLAGHER's employee health plan.

7      24.      Despite WINET's significant success in selling VEBA to schools, less than one
8  month after his instrumental role in securing SDUHSD's business, WINET was suddenly
9  transferred out of the educational sales position to the small group sales department of
10 GALLAGHER. WINET was tasked with going to small businesses and advising them that
11 GALLAGHER had a plan to provide small group businesses the favorable rates of large groups,
12 and that the small businesses could benefit from these rates in the near future. This new position
13 did not take advantage of WINET's significant background and connections in the educational
14 field which had been one of the main reasons Mr. McGregor hired WINET. Despite this, WINET
15 immediately began selling this plan to small businesses. This included selling to small law firms,
16 obtaining a change in broker of record to GALLAGHER, and pursuing leads.

17     25.      In February 2019, pursuant to WINET's August 8, 2017 compensation agreement,
18 WINET advised Laura Josh (Vice President of Sales) that he should be receiving the commission
19 for the SDUHSD account. Although there was no doubt that WINET was the procuring cause of
20 the SDUHSD account, Annemieke Tomey (area Vice President and CFO of Operations) and Laura
21 Josh denied WINET's request for the commission in February of 2019. This was shocking to
22 WINET because without WINET's relationships and efforts, this sale would not have occurred.

23     26.      From January of 2019 through April of 2019, WINET put together prospect lists
24 and qualified client prospects for this business. He continued to make sales calls to multiple
25 companies. This included meeting with and talking to prospective clients with significant
26 potential of annual revenue to GALLAGHER.

27     27.      In March of 2019, WINET discovered that another GALLAGHER employee was
28 improperly receiving the commission for the sale of SDUHSD Certificated Unit.

6
**COMPLAINT FOR DAMAGES**

28.     In April 2019, WINET proposed a move to the Sorrento Valley Office from the office where he was located for more sales, team work and support. Despite these continued efforts to improve and increase sales in a new department, McGREGOR employees, including Laura Josh, took every opportunity to minimize WINET's sales accomplishments.

29.     On April 24, 2019, WINET was suddenly and unexpectedly placed on a "90-day performance improvement plan." The main issue discussed was there was concern that WINET had provided the name of the CSO of the County Office of Education as a sales lead to another person. WINET personally knew the CSO, and the CSO never made any complaint to WINET about this issue. Nevertheless, GALLAGHER used it as one of the primary points for WINET's 90-day improvement plan. Additionally, GALLAGHER claimed that WINET's sales activity needed to improve.

30.     Upon receiving the 90-day improvement plan, although the basis for the plan was questionable, WINET vowed to follow that plan and improve sales activity. WINET continued to increase his sales activity and contacts.

31.     Despite the fact that another GALLAGHER employee was improperly receiving commission for the SDUHSD VEBA account and WINET had been moved to small business sales, WINET remained the primary point contact for SDUHSD's VEBA needs. As recently as April of 2019, SDUHSD contacted WINET to obtain an estimate of the projected rate increase for VEBA for 2020. WINET provided SDUHSD with a ballpark range, but told SDUHSD that he would have Matt Bittner get back to him since WINET had been transferred to the small business sales team. Mr. Bittner did not have the contact information and requested that WINET provide it to him. WINET complied with this request.

32.     On June 21, 2019, WINET advised Laura Josh and Diane Pacheco of GALLAGHER that he had recently been diagnosed with skin cancer. Specifically, he was diagnosed with what WINET's doctor believed was basal cell carcinoma and squamous cell carcinoma. WINET further advised Laura Josh and Diane Pacheco that he had recently undergone five biopsies to determine if he had melanoma. Neither Ms. Josh and Ms. Pacheco responded to WINET's June 21, 2019 email.

33.     On June 24, 2019, WINET sent a follow up email, confirming that his June 21, 2019 email advising of his medical condition was received.

34.     On June 25, 2019, Laura Josh responded that she had received WINET's email regarding his skin cancer. Ms. Josh copied Ms. Pacheco on her response. That same day, WINET met with Laura Josh to go through his weekly update of business activity, and to advise her of his pending business because he was going to be out of the office starting June 29, 2019. In doing so, WINET provided Ms. Josh several pages of sales leads that he was working on, and the progress of those sales leads. In response, Laura Josh responded to WINET by saying, "Okay, cool." Ms. Josh did not make any suggestion nor express any concern that WINET was not meeting the expectations as outlined in the 90-day improvement plan.

35.     On the afternoon June 27, 2019, WINET had a meeting with Ms. Josh and Ms. Pacheco. WINET was blind-sided and told that he was being terminated immediately based upon an alleged lack of production. He was further informed that June 27, 2019 would be his last day at work, and that all of his health benefits would also cease on that day. The reason provided for the termination by GALLAGHER was "inability to meet quarterly sales goals in your Performance Improvement Plan per Gallagher's sales expectations." At no time did anyone from GALLAGHER advise WINET that he was not meeting expectations. In fact, two days prior Ms. Josh had given WINET the impression his performance was satisfactory.

36.     WINET's termination came just 60 days into his 90 day performance improvement plan and only 6 days after he informed GALLAGHER of his skin cancer diagnosis.

37.     GALLAGHER terminated WINET's healthcare benefits on June 28, 2019. GALLAGHER did not provide WINET with the election notice for COBRA benefits prior to terminating his healthcare benefits despite knowing that WINET had been recently diagnosed with skin cancer and had pending medical appointments and medications.

38.     In the days following WINET's termination, he went to previously scheduled medical appointments and he was told that this healthcare insurance had been canceled. Further, when he attempted to obtain prescriptions for his skin cancer medication, he was informed that those prescriptions were not covered. WINET was not provided the option to keep his healthcare

1 | going at the time of his termination, and was forced to incur out-of-pocket expenses for his
2 | medical care.

3 |     39.    WINET was *later* provided the right to obtain COBRA benefits, which he
4 | immediately paid, and healthcare benefits were reinstated.  However, GALLAGHER's actions
5 | canceled all of WINET's health insurance for a period of time, and failed to provide him coverage
6 | for doctor's appointments and medication that he needed for his cancer diagnosis.  GALLAGHER
7 | knew of WINET's pending medical appointments and knew that these appointments and
8 | medications were necessary based upon WINET'S June 21, 2019 email.

9 |     40.    Further, the commissions on the GUHSD and OUSD sales that WINET had
10 | generated in the past (for which he was promised commissions for three years from the time the
11 | clients started using VEBA benefits) were immediately stopped.

12 | **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13 |     41.    WINET has exhausted all necessary and required administrative remedies.
14 | Specifically, Plaintiff WINET filed a timely charge of discrimination with the California
15 | Department of Fair Employment and Housing (hereafter "DFEH") against Defendants on
16 | September 10, 2019, and each of them, and thereafter received from the DFEH a notice of right to
17 | bring a civil action against each Defendant on September 10, 2019.  Additionally, WINET filed
18 | timely charges of disability discrimination with the Equal Employment Opportunity Commission
19 | ("EEOC"). The EEOC issued WINET a right-to-sue letter on November 7, 2019.

20 | **FIRST CAUSE OF ACTION**

21 | **Breach of Contract**

22 | **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

23 |     42.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each
24 | and every allegation and part thereof, of this Complaint, with the same force and effect as though
25 | fully set forth herein.

26 |     43.    On or about August 8, 2017, Plaintiff WINET entered into a compensation
27 | agreement with McGREGOR.  The agreement provided that WINET would be employed as
28 | General Manager of Sales for McGREGOR.  As part of the agreement, WINET was to receive a

9

**COMPLAINT FOR DAMAGES**

1    slightly higher annual salary plus commissions of 25 cents per new member per month. The

2    commissions would continue for three years from the time the business started.

3        44.    The terms of this agreement remained effective when McGREGOR was sold to

4    GALLAGHER.

5        45.    WINET successfully procured business from GUHSD, effective January 1, 2018

6    and OUSD, effective May 1, 2018. WINET began receiving his monthly commission payments

7    for the sales to GUHSD and OUSD pursuant to his compensation agreement. These commission

8    payments continued after the sale of McGREGOR to GALLAGHER.

9        46.    On June 27, 2019, WINET was terminated and his commission payments for the

10    GUHSD and OUSD sales abruptly and improperly stopped, despite the prior agreement that the

11    commission from each sale would continue for three years from the date the new members VEBA

12    commenced.

13        47.    Defendants breached WINET's compensation agreement by failing to continue to

14    pay WINET his commissions for the GUHSD and OUSD sales.

15        48.    As a direct and proximate result of the breach of contract by Defendants, WINET

16    has been damaged. WINET suffered and continues to suffer substantial losses in earnings,

17    including but not limited to the commissions for the GUHSD and OUSD sales.

18        49.    Additionally, WINET was instrumental in securing the business of the Certificated

19    Unit of San Dieguito Union High School District (SDUHSD) in September 2018. The San

20    Dieguito Certificated Unit had an effective date of January 1, 2019. WINET's established

21    relationship with key personnel at SDUHSD, and continued contact with them, was the reason

22    GALLAGHER obtained the Certificated Unit business from SDUHSD.

23        50.    Pursuant to WINET's compensation agreement, WINET was entitled to the

24    commission for SDUHSD. WINET's request for payment was denied by Annemieke Tomey and

25    Laura Josh of GALLAGHER in February of 2019.

26        51.    In March 2019, it was discovered that a different employee of GALLAGHER was

27    receiving the commissions for the sale of SDUHSD Certificated Unit.

28    ///

52.    Defendants have further breached WINET's compensation agreement by failing to pay WINET the commissions owed for the SDUHSD Certificated Unit sale.

53.    As a direct and proximate result of the breach of contract by Defendants, WINET has been damaged. WINET suffered and continues to suffer substantial losses in earnings, including but not limited to the unpaid commission from the SDUHSD Certificated Unit sale.

## SECOND CAUSE OF ACTION

**Discrimination and Harassment in Violation of California Government Code §12940(a), (j)**

**(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

54.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each and every allegation and part thereof, of this Complaint, with the same force and effect as though fully set forth herein.

55.    At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940 et seq., was in full force and effect and fully binding upon Defendants. Plaintiff was a member of a group protected by the statute, in particular Sections 12940(a) and (j), prohibiting discrimination and harassment in employment based on disability, medical condition, and age.

56.    WINET was 60 years old at the time he was terminated. At all times during his employment with McGREGOR and GALLAGHER, WINET was more than 40 years of age and considered to be a member of a protected class.

57.    During his employment, WINET was diagnosed with skin cancer and therefore, was also a member of a protected class based on his actual and perceived medical condition.

58.    WINET was repeatedly told that he was doing an excellent job, and that George McGregor was pleased with his sales and the use and development of his relationships. On May 2, 2018, George McGregor told WINET that he was going to be his "schools expert" and that he was delighted with the work WINET had performed.

59.    While Mr. McGregor believed that WINET's age and experience was an asset, others at McGREGOR and GALLAGHER did not agree and felt that WINET's success, age, and established connections was a threat to their positions in the company.

11

**COMPLAINT FOR DAMAGES**

1      60.    Despite his significant success, WINET was suddenly and unexpectedly transferred

2  out of his area of expertise in November of 2018. This transfer was the furtherance of Defendants'

3  actions to discriminate against, harass and oust WINET from the company. In April of 2019,

4  WINET proposed a move to the Sorrento Valley Office from the office where he was located for

5  more sales, team work and support. WINET proposed this change because he wanted to continue

6  his success in selling to small businesses. WINET's request was denied.

7      61.    Then, four days later, on April 24, 2019, WINET was unjustifiedly placed on a "90-

8  day performance improvement plan." The performance plan was another action taken to harass

9  WINET in part, based on his age, experience, and success. The performance plan was

10  manufactured to create a reason for WINET's termination without the required notice period or

11  severance pay, as set forth in the GALLAGHER agreement. Upon receiving the 90-day

12  improvement plan, WINET agreed to follow that plan, and further improved his sales activity.

13      62.    On June 21, 2019, WINET advised Laura Josh and Diane Pacheco that he had

14  recently been diagnosed with skin cancer and will need future treatment. On June 24, 2019,

15  WINET sent a follow up email, confirming that his June 21, 2019 email advising that he had skin

16  cancer was received. On June 25, 2019, Laura Josh responded that she had received WINET's

17  email regarding his skin cancer. Ms. Josh copied Ms. Pacheco on her response.

18      63.    On June 27, 2019, WINET's employment was terminated, effective immediately.

19  The reason provided by GALLAGHER for his termination was "inability to meet quarterly sales

20  goals in your Performance Improvement Plan per Gallagher's sales expectations." This alleged

21  reason for his termination was not supported by WINET's sales activity and pending business.

22      64.    Given prior discriminatory and harassing conduct, and WINET's recent email

23  advising that he had skin cancer and the need for future treatment, it was clear that WINET was

24  terminated because of his age, success, experience and actual or perceived medical condition.

25      65.    On June 27, 2019, GALLAGHER also terminated WINET's health care coverage,

26  effective immediately. WINET was not provided the option to continue his coverage despite

27  Defendants knowing that he had future appointments and required medication for his recent skin

28  cancer diagnosis. Cancelling WINET's health insurance was done for the purpose of

1   discriminating and harassing WINET based on his age and medical condition.

2       66.    Defendants' discriminatory and harassing actions against Plaintiff, as alleged herein,

3   constituted unlawful discrimination and harassment in employment on account of Plaintiff's age

4   and experience, and actual or perceived medical condition, in violation of California Government

5   Code §§ 12940 (a) and (j).

6       67.    As a direct, foreseeable and proximate result of Defendants' unlawful actions,

7   Plaintiff  WINET has suffered and continues to suffer substantial losses in earnings, equity and

8   other employment benefits and the intangible loss of employment-related opportunities for growth

9   in his field and damage to his professional reputation, all in an amount according to proof at the

10  time of trial.

11      68.    As a further direct, foreseeable and proximate result of Defendants' unlawful

12  actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to

13  the Plaintiff's damage in an amount to be proven at time of trial.

14      69.    Additionally, as a proximate result of the wrongful acts of Defendants, and each of

15  them, Plaintiff has been forced to hire an attorney to prosecute his claims herein, and has incurred

16  and is expected to continue to incur attorneys fees and costs in connection therewith. Accordingly,

17  Plaintiff requests attorneys fees and costs under California Government Code § 12965(b).

18  **THIRD CAUSE OF ACTION**

19  **Failure to Take All Reasonable Steps to Prevent Discrimination and Harassment in**

20  **Violation of California Government Code §12940(k)**

21  **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

22      70.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each

23  and every allegation and part thereof, of this Complaint, with the same force and effect as though

24  fully set forth herein.

25      71.    At all times herein mentioned, California's Fair Employment and Housing Act

26  ("FEHA"), California Government Code §§ 12900, et seq., was in full force and effect and was

27  fully binding upon Defendant.  Specifically, § 12940(k) makes it an unlawful employment practice

28  for an employer to fail to take all reasonable steps necessary to prevent discrimination and

13

**COMPLAINT FOR DAMAGES**

1  harassment from occurring.

2      72.    As set forth above, WINET was the subject of harassing and discriminatory conduct

3  in violation of California Government Code §12940(a), (j) based on his age and experience, and

4  actual or perceived medical condition.

5      73.    Defendants knew, or should have known, that their employees and supervisors were

6  engaging in discriminatory and harassing conduct against WINET based on his age and experience

7  and his actual or perceived medical condition.

8      74.    Defendants failed to take reasonable steps to prevent the discriminatory and

9  harassing conduct.  These failures included, but are not limited to, a lack of proper policies and

10  procedures aimed at preventing discrimination and harassment, lack of training regarding

11  discrimination and harassment, and a lack of oversight of Defendants' employees.

12      75.    As a direct, foreseeable and proximate result of Defendants' unlawful actions,

13  Plaintiff WINET has suffered and continues to suffer substantial losses in earnings, equity and

14  other employment benefits and the intangible loss of employment-related opportunities for growth

15  in his field and damage to his professional reputation, all in an amount according to proof at the

16  time of trial.

17      76.    As a further direct, foreseeable and proximate result of Defendants' unlawful

18  actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to

19  the Plaintiff's damage in an amount to be proven at time of trial.

20      77.    Additionally, as a proximate result of the wrongful acts of Defendants, and each of

21  them, Plaintiff has been forced to hire an attorney to prosecute his claims herein, and has incurred

22  and is expected to continue to incur attorneys fees and costs in connection therewith. Accordingly,

23  Plaintiff requests attorneys fees and costs under California Government Code § 12965(b).

24                          **FOURTH CAUSE OF ACTION**

25              **Retaliation in Violation of California Labor Code §1102.5**

26              **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

27      78.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each

28  and every allegation and part thereof, of this Complaint, with the same force and effect as though

                                    14

1  fully set forth herein.

2      79.    At all times herein mentioned, the California Labor Code was in effect and binding
3  on Defendants.  This statute prohibits defendants from retaliating against an employee, including
4  WINET, for disclosing violations of law.

5      80.    WINET objected to Defendants' illegal conduct, including but not limited to the
6  failure to uphold the terms of his compensation agreement and the misappropriation of his
7  commissions to another employee.

8      81.    As a proximate result of WINET's complaints, Defendants retaliated against
9  WINET.  Defendants' retaliatory conduct included, but was not limited to, transferring WINET
10  away from his department, denying WINET's request to transfer to an office that would support
11  him in his new role selling to small businesses, minimizing WINET's sales achievements,  placing
12  WINET on an unjustified performance improvement plan, terminating WINET, and immediately
13  cancelling his benefits.

14      82.    Defendants' conduct was directly and causally related to WINET's objection to
15  Defendants' unlawful conduct.

16      83.    As a direct, foreseeable, and proximate result of Defendants' willful, knowing, and
17  intentional violations of Labor Code § 1102.5, WINET has suffered and continues to suffer
18  humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a
19  sum according to proof.

20      84.    As a direct, foreseeable, and proximate result of Defendants' unlawful actions,
21  Plaintiff has suffered and continues to suffer losses in earnings, equity and other employment
22  benefits and has incurred other economic losses.

23                          **FIFTH CAUSE OF ACTION**

24      **Violation of the Employee Retirement Income Security Act of 1974 (ERISA)**

25          **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

26      85.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each
27  and every allegation and part thereof, of this Complaint, with the same force and effect as though
28  fully set forth herein.

                                    15
                          **COMPLAINT FOR DAMAGES**

86.     At all times herein mentioned, ERISA was in full force and effect and was fully binding upon Defendant.  Specifically, ERISA § 502; 29 U.S.C. § 1132(a), authorizes a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his rights under the terms of the plan.

87.     During his employment with GALLAGHER, WINET participated in GALLAGHER's health plan and was a covered employee within the meaning of ERISA § 607(2); 29 U.S.C. §1167.

88.     Defendants conduct unlawfully interfered with WINET's protected rights under his health plan in violation of ERISA § 510 and 29 U.S.C. § 1140. Discharging an employee for the purpose of depriving the employee of continued participation in a company-provided medical insurance plan is a violation of ERISA § 510 and 29 U.S.C. § 1140.

89.     Defendants terminated WINET with the intent of depriving WINET of access to the health plan benefits provided by GALLAGHER as a result of his recent skin cancer diagnosis, in violation of ERISA.  Specifically, WINET informed his supervisors that he had been diagnosed with skin cancer and was undergoing additional tests to determine if it was melanoma.  Further WINET advised that he anticipated subsequent procedures may be necessary.  WINET's employment and health benefits were terminated 6 days after he informed his supervisor of his need for further treatment.

90.     Defendants did not have a legitimate, non-discriminatory reason for terminating WINET.

91.     WINET's alleged performance deficiencies were a pretext for Defendants' discriminatory and harassing behavior, and ultimately a pretext for his termination.

92.     As a direct, foreseeable and proximate result of GALLAGHER's wrongful termination of Plaintiff and the immediate termination of health benefits, GALLAGHER unlawfully interfered with WINET's access to benefits to which he was entitled as a covered employee of GALLAGHER's health plan.

93.     Further, as a direct, foreseeable, and proximate result of Defendants' unlawful actions, WINET has suffered and continues to suffer losses in earnings, equity, health benefits and

16

**COMPLAINT FOR DAMAGES**

1    has incurred other economic losses.

2    ## SIXTH CAUSE OF ACTION

3    **Wrongful Termination of Employment in Violation of Public Policy**

4    **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

5    94.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each

6    and every allegation and part thereof, of this Complaint, with the same force and effect as though

7    fully set forth herein.

8    95.    Defendants terminated WINET's employment in violation of various fundamental

9    public policies underlying both state and federal laws. Specifically, WINET's employment was

10    terminated in part because of his protected status (i.e., age and experience, actual or perceived

11    medical condition and/or good faith complaints).  These actions were in violation of state and

12    federal law, including but not limited to FEHA, the California Constitution, California Labor Code

13    § 1102.5, and ERISA.

14    96.    As a proximate result of Defendants' wrongful termination of WINET's

15    employment in violation of fundamental public policies, plaintiff has suffered and continues to

16    suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage

17    in a sum according to proof.

18    97.    As a result of Defendants' wrongful termination of his employment, WINET has

19    suffered general and special damages in sums according to proof.

20    98.    WINET has incurred and continues to incur legal expenses and attorneys' fees.

21    Pursuant to Code of Civil Procedure §§ 1021.5 and 1032, et seq., plaintiff is entitled to recover

22    reasonable attorneys' fees and costs in an amount according to proof.

23    ## SEVENTH CAUSE OF ACTION

24    **Violation of Labor Code §§ 201, 203, 218, 218.5 Failure to Pay All Wages Due Upon**

25    **Termination and Waiting Time Penalties**

26    **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

27    99.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each

28    and every allegation and part thereof, of this Complaint, with the same force and effect as though

17

**COMPLAINT FOR DAMAGES**

1  fully set forth herein.

2       100.   At all relevant times, the California <u>Labor Code</u> was in full force and effect and

3  binding on Defendants.  Specifically, <u>Labor Code</u> § 201 employers are required to pay an

4  employee's wages earned and unpaid at the time of discharge are due and payable immediately.

5  Wages include all amounts for labor performed by employees of every description, whether the

6  amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other

7  method of calculation.  Further, <u>Labor Code</u> § 203 provides for waiting time penalties for each day

8  the wages go unpaid, up to 30 days.  <u>Labor Code</u> § 218 provides that of any wage claimant to sue

9  directly for any wages or penalty due.

10      101.   WINET was employed by Defendants.

11      102.   WINET was instrumental to procuring SDUHSD's Certified Unit business.

12      103.   According to the terms of WINET's compensation agreement, he was entitled to

13  commission in the amount of $0.25 per new member, per month enrolled for three years.

14      104.   Defendants willfully failed to pay WINET commission for the SDUHSD business

15  at the time of his termination.  Further, Defendants abruptly stopped payments and willfully failed

16  to pay the commission payments for WINET's procurement of GUHSD and OUSD at his

17  termination, despite commissions still being owed, pursuant to the compensation agreement.

18      105.   WINET was entitled to commissions in connection with SDUSHD's business in an

19  amount according to proof.   WINET was entitled to remaining commissions in connection with

20  GUHSD's and OUSD's business in an amount according to proof.

21      106.   Defendants willfully failed to pay these commissions upon WINET's termination in

22  accordance with <u>Labor Code</u> § 201, and WINET is therefore also entitled to waiting time penalties

23  under <u>Labor Code</u> § 203.

24      107.   These commissions remain unpaid, and therefore as a result of Defendants' ongoing

25  and willful conduct, Plaintiff is entitled to payment of these earned commissions and waiting time

26  penalties in an amount of up to thirty (30) days' commissions, together with interest thereon and

27  reasonable attorney's fees and costs.

28  ///

## EIGHTH CAUSE OF ACTION

### Violation of the American With Disabilities Act

### (Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)

108.    Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each and every allegation and part thereof, of this Complaint, with the same force and effect as though fully set forth herein.

109.    WINET is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that she has skin cancer, the Defendants perceives him to have a disability, he has the requisite education, skill, training, and experience to perform and can perform the essential functions of a General Manager of Sales, and held a position as a General Manager of Sales with Defendants.

110.    GALLAGHER and DOES 1-25 are "employers" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

111.    WINET was an employee of McGREGOR and then, after the sale of McGREGOR, an employee of GALLAGHER within the meaning of 42 U.S.C. § 12111(4).

112.    Prior to and at the time that GALLAGHER terminated WINET's employment, WINET was qualified for employment as GALLAGHER's General Manager of Sales.

113.    On June 27, 2019, due to WINET's actual or perceived disability, GALLAGHER terminated WINET's employment. 42 U.S.C. § 12112(a). Specifically, GALLAGHER's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying GALLAGHER in a way that adversely affected his opportunities or status because of his actual or perceived disability within the meaning of § 12112(b)(1); (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability within the meaning of § 12112(b)(3)(A); (3) denying employment opportunities to WINET based on GALLAGHER's need to make reasonable accommodations for his impairments within the meaning of § 12112(b)(5)(B); and (4) using qualification standards, employment tests, or other

19

**COMPLAINT FOR DAMAGES**

1 | selection criteria that screened out or tended to screen out individuals with disabilities, despite the

2 | fact that doing so was not consistent with business necessity, within the meaning of § 12112(b)(6).

3 |      114.   WINET has been damaged by Defendants' violation of the ADA inasmuch as

4 | WINET has suffered loss of past and future wages and benefits, loss of professional opportunities,

5 | emotional distress, and mental pain and anguish.

6 |      115.   WINET is entitled to his attorneys' fees and costs incurred in this matter pursuant

7 | to 42 U.S.C. § 12205.

8 |      116.   WINET is further to any and all relief permitted under the ADA, 42 U.S.C. §

9 | 12117(a), including equitable relief.

10 | ### NINTH CAUSE OF ACTION

11 | ### Fraud

12 | ### (Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)

13 |      117.   Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each

14 | and every allegation and part thereof, of this Complaint, with the same force and effect as though

15 | fully set forth herein.

16 |      118.   McGREGOR and GALLAGHER represented to WINET that WINET would use

17 | his prior school community connections to sell VEBA and that WINET would be provided

18 | commissions for selling VEBA to those school community connections. This included WINET

19 | receiving continuing commissions for three years from the time that a school district switched to

20 | VEBA. At all times, GALLAGHER never intended to follow through with its representation to

21 | pay WINET ongoing or new commissions, but instead intended not to pay WINET the

22 | commissions he had earned, or provide WINET the commission he had earned for SDUHSD.

23 | Thus, GALLAGHER made a false and fraudulent representation of a material fact (that WINET

24 | would be paid commissions as specified above), knowing this statement was untrue. The

25 | statement was made to induce reliance by WINET that said commissions would be paid, and

26 | WINET relied on this statement to his detriment.

27 |      119.   As a direct, foreseeable and proximate result of Defendants' fraudulent actions,

28 | Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to Plaintiff's

1   damage in an amount to be proven at the time of trial.

2      120.   As a further, direct, foreseeable and proximate result of Defendants' actions,
3   Plaintiff has suffered and continues to suffer substantial losses in earnings and employment
4   benefits, all in an amount to be proven at the time of trial.

5      121.   The intentional and fraudulent misrepresentation of a material fact known to the
6   Defendants was made with the intention of the Defendants depriving Plaintiff of property or legal
7   rights and causing injury.  The actions of Defendants constitute fraud and malice and were
8   performed in a willful and conscious disregard of the rights and safety of WINET, entitling
9   Plaintiff to punitive damages pursuant to Civil Code §3294.

10                          **TENTH CAUSE OF ACTION**

11                 **Negligence, Including Negligent Misrepresentation**

12           **(Against Defendant Arthur J. Gallagher & Co., and DOES 1-50)**

13      122.   Plaintiff incorporates and re-alleges by reference all previous paragraphs, and each
14   and every allegation and part thereof, of this Complaint, with the same force and effect as though
15   fully set forth herein.

16      123.   Defendants' conduct as alleged above was negligent and further constituted a
17   negligent misrepresentation.  Specifically, Defendants' unlawful, unfair, discriminatory, harassing,
18   and retaliatory actions and representations leading up to and including WINET's termination were
19   negligent.  Further, Defendants' action in cancelling WINET's health insurance immediately at
20   termination despite actual knowledge of WINET's cancer diagnosis was negligent.  Defendants
21   knew or should have known that this conduct would have a devastating impact on WINET and
22   cause serious emotional distress.

23      124.   Defendants' negligent conduct was a substantial factor in causing WINET's serious
24   emotional distress.

25      125.   As a proximate result of Defendants' negligent conduct, WINET has suffered and
26   continues to suffer severe emotional distress.  WINET has sustained and continues to sustain
27   substantial losses of earnings and other employment benefits as a result of being emotionally
28   distressed.

                                    21
                          **COMPLAINT FOR DAMAGES**

126.    As a proximate result of Defendants' negligent conduct, WINET has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

**WHEREFORE**, Plaintiff WINET prays that the Court grant him the following relief:

1.    Compensatory damages in an amount in excess of the minimum jurisdiction of this Court, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof allowed by law;

2.    For costs of suit;

3.    For attorneys fees and costs, pursuant to all relevant statutes, including, but not limited to Government Code §12965(b), 42 U.S.C. § 12205, ERISA § 502(g)(1); and Labor Code § 218.5.

4.    For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

5.    For punitive damages based upon the fraud and malice committed by Defendants.

6.    For an award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper and in the interests of justice.

Dated: 1/25/19

WINET PATRICK GAYER
CREIGHTON & HANES

By: _____
AARON C. HANES
Attorneys for Rick Winet

22

**COMPLAINT FOR DAMAGES**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7074 |

| PLAINTIFF(S) / PETITIONER(S): | Richard Winet |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Arthur J Gallagher & Co |
|---|---|

WINET VS. GALLAGHER [IMAGED]

| NOTICE OF CASE ASSIGNMENT<br>and CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>37-2019-00062836-CU-WT-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Ronald L. Styn                                          Department: C-74

**COMPLAINT/PETITION FILED:** 11/25/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/01/2020 | 10:00 am | C-74 | Ronald L. Styn |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2019-00062836-CU-WT-CTL        CASE TITLE: Winet vs. Gallagher [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
>             (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
>             (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_
>             (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not |
| • Saves money | resolve the dispute |
| • Gives parties more control over the dispute | • Procedures to learn about the other side's case (discovery), |
| resolution process and outcome | jury trial, appeal, and other court protections may be limited |
| • Preserves or improves relationships | or unavailable |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):

- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | *FOR COURT USE ONLY* |
| STREET ADDRESS:   330 West Broadway | |
| MAILING ADDRESS:   330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME:   Central | |

PLAINTIFF(S):   Richard Winet

DEFENDANT(S): Arthur J Gallagher & Co

SHORT TITLE:   WINET VS. GALLAGHER [IMAGED]

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2019-00062836-CU-WT-CTL |
|---|---|

Judge: Ronald L. Styn                                                                    Department: C-74

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                          ☐ Non-binding private arbitration

☐ Mediation (private)                                         ☐ Binding private arbitration

☐ Voluntary settlement conference (private)        ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                            ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                          Date: _____

_____                     _____
Name of Plaintiff                                                  Name of Defendant

_____                     _____
Signature                                                            Signature

_____                     _____
Name of Plaintiff's Attorney                                  Name of Defendant's Attorney

_____                     _____
Signature                                                            Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 11/26/2019                                          _____
                                                                          JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1