# EXHIBIT C

## WINET PATRICK GAYER CREIGHTON & HANES

A LAW CORPORATION

SAN DIEGO OFFICE
701 B STREET, SUITE 1275
SAN DIEGO, CA 92101
TELEPHONE (619) 702-3902
FACSIMILE (619) 702-5432

1215 W. VISTA WAY
VISTA, CALIFORNIA 92083
TELEPHONE (760) 758-4261
FACSIMILE (760) 758-6420

PALM SPRINGS OFFICE
1111 E. TAHQUITZ CANYON WAY, STE. 113
PALM SPRINGS, CA 92262
TELEPHONE (760) 416-1400
FACSIMILE (760) 416-1405

ahanes@wpgch.com

August 9, 2019

**PRIVILEGED SETTLEMENT COMMUNICATIONS PURSUANT TO
PURSUANT TO EVIDENCE CODE §§ 1119, 1122, 1152 and 1154**

**Via Email and U.S. Mail**

Sandra Gibson
Arthur J. Gallagher & Co.
10505 Sorrento Valley Road, Suite 200
San Diego, CA 92121

Re:   Richard Winet v. Arthur J. Gallagher & Co.
      Our File: BC20794

Dear Ms. Gibson:

Our firm has been retained to represent the interests of Mr. Richard Winet for all claims related to his wrongful termination on June 27, 2019 by Arthur J. Gallagher & Co. ("Gallagher"). Prior to his termination, in retaliation for his actions and requests to receive earned commissions, Mr. Winet was inexplicably transferred to a new position in November of 2018 and placed on a 90-day Performance Improvement Plan in April of 2019. Shortly thereafter, within a week of informing his supervisors that he had been diagnosed with cancer, Mr. Winet was fired. As a result of the retaliation, and discrimination based upon disability and his medical condition, Mr. Winet has been significantly damaged by Gallagher. Mr. Winet will immediately begin proceedings under the Fair Employment & Housing Act unless a resolution of his claims can be achieved.

Mr. Winet was hired by George McGregor of McGregor & Associates ("McGregor") on June 12, 2017 as the General Manager for Sales in order to sell one of McGregor's main products, California VEBA. When Mr. Winet was hired by George McGregor, Mr. McGregor informed Mr. Winet that he liked the fact that Mr. Winet had established relationships with persons throughout San Diego County, including persons in the school community. At the time Mr. Winet was hired into the position, then Vice President of Sales, Laura Josh, was out on maternity leave.

Ms. Sandra Gibson
Re: Richard Winet v. Arthur J. Gallagher & Co.
August 9, 2019
Page 2

On August 8, 2017, Mr. Winet accepted an amendment to his compensation offer and entered into an agreement with McGregor as the General Manager of Sales with a $155,000 annual salary and commissions of 25 cents per new member per month. This agreement remained in place until Mr. Winet's termination.

One of the school districts that Mr. Winet had pre-existing relationships with was the Grossmont Union High School District (GUHSD). Mr. Winet successfully convinced GUHSD to switch its healthcare benefits to VEBA in September of 2017, with an effective date of January 1, 2018.

In the August 8, 2017 agreement, Mr. Winet was also granted commission for The County of San Diego account, which was effective January 1, 2018. Mr. Winet also had pre-existing relationships with persons at the Oceanside Unified School District (OUSD). As a result of 11 months of sales work and these relationships, OUSD moved their health benefits to VEBA effective May 1, 2018.

Through Mr. Winet's school community connections, he also made contact with Tim Staycer (President of Certificated Personnel) for San Dieguito Union High School District (SDUHSD) in April of 2018. Mr. Winet kept in close contact with Tim Staycer throughout 2018. The relationship Mr. Winet built and cultivated paid dividends for his employer by ultimately landing the SDUHSD account.

On multiple occasions, George McGregor told Mr. Winet that he was doing an excellent job, and was pleased with his sales and the use and development of his relationships. On May 2, 2018, Mr. McGregor told Mr. Winet that he was going to be his "schools expert" and that he was delighted with the work Mr. Winet had performed. By that time, Mr. Winet was already earning approximately $1,547.50 a month in commissions over and above his salary.

In June of 2018, George McGregor sold McGregor to Gallagher. The employees working for McGregor were kept as employees of Gallagher, and were assured by Mr. McGregor that their positions and jobs were secure. Mr. Winet was further told that he would be paid for all of his school work.

In September of 2018, the San Dieguito Certificated Unit decided to move to VEBA, with a January 1, 2019 effective date. The reason SDUHSD went with VEBA was due to Mr. Winet's pre-existing and ongoing relationship with Tim Staycer. Pursuant to Mr. Winet's compensation agreement dated August 8, 2017, he requested the commission for SDUHSD. Although there was no doubt that Mr. Winet was the procuring cause and reason why VEBA obtained the

Ms. Sandra Gibson
Re: Richard Winet v. Arthur J. Gallagher & Co.
August 9, 2019
Page 3

SDUHSD account, he was denied his request for the commission by Laura Josh. Instead, the commissions for SDUHSD were provided to Don Prezioso rather than to Mr. Winet.

Despite Mr. Winet's significant success in selling VEBA to school districts, Mr. Winet was then transferred to small group sales on November 15, 2018. Although this new position did not take advantage of Mr. Winet's significant background and connections in the educational field, he immediately began selling this plan to small businesses.

From January of 2019 through April of 2019, Mr. Winet compiled prospect lists and qualified client prospects for this business. He continued to make sales calls to multiple companies. This included teleconferences and meetings with prospective clients that could lead to hundreds of thousands of dollars in annual revenue to Gallagher.

Despite these efforts, on April 24, 2019, Mr. Winet was placed on a retaliatory "90-day performance improvement plan" by Ms. Josh for failing to meet quarter sales goals. In addition to there being no defined quarterly sales goals, the performance improvement plan completely ignored all of Mr. Winet's sales and revenues he had generated to date for his employer. Even given the questionable nature and timing of the performance improvement plan, Mr. Winet vowed to follow that plan and further improve his sales activity. There is substantial documentation reflecting Mr. Winet's sales activity and contacts in order to procure more sales at a significant estimated annual revenue for Gallagher.

On June 21, 2019, Mr. Winet sent an email to Laura Josh and Diane Pacheco stating that he had just returned from a visit with a dermatologist who advised that he had been diagnosed with skin cancer after taking five biopsies. Mr. Winet informed Ms. Josh and Ms. Pacheco that he would advise them of the results of further tests and the subsequent needed procedures as soon as they were known to Mr. Winet.

On June 25, 2019, Mr. Winet met with Ms. Josh to go through his weekly update of business activity, and to advise her of his pending business because he was going to be out of the office on vacation for five days starting July 1, 2019. In doing so, Mr. Winet provided Ms. Josh several pages of sales leads that he was working on, and the progress of those sales leads. Ms. Josh gave the impression that she was pleased with his efforts.

On the afternoon of June 27, 2019, just 60 days into his performance improvement plan, and six days after he had sent the email regarding his skin cancer, Mr. Winet was blind-sided and told that he was being terminated based upon an alleged lack of production. He was further informed that June 27, 2019 would be his last day at work, and that *all of his health benefits*

Ms. Sandra Gibson
Re:  Richard Winet v. Arthur J. Gallagher & Co.
August 9, 2019
Page 4

*would also cease immediately.*  Remarkable conduct for a company that holds itself out as one of the most ethical companies in the world.

Remarkably, Gallagher did just what they said.  Mr. Winet's healthcare benefits were terminated that day despite Gallagher having clear notice of Mr. Winet's disability and critical need for ongoing and continuing medical treatment.  When he subsequently went to medical appointments, Mr. Winet was told that this healthcare insurance had been canceled.  Further, when he attempted to obtain prescriptions for his skin cancer medication, he was informed that those prescriptions were not covered.  There was no ability for Mr. Winet to keep his healthcare going at the time of his termination.  He was later provided the right to obtain COBRA benefits which he immediately paid, and healthcare benefits were reinstated.  However, Gallagher's actions canceled all of Mr. Winet's health insurance for two weeks, and failed to provide him coverage for doctor's appointments and medication that he needed for his cancer diagnosis.

Mr. Winet was retaliated against by his supervisors by removing him from his school sales activities, denying him earned commissions, and placing him on a performance improvement plan.  Then, even despite providing every indication that he was going to meet and surpass the goals outlined for him in the retaliatory performance improvement plan, just six days after informing Gallagher that he had been diagnosed with cancer, Mr. Winet was fired.  Mr. Winet will be able to satisfy his burden on the retaliation claim, as well as the disability discrimination claim.  Sandell v. Taylor-Listug, Inc. (2010) 188 Cal.App.4th 297, 310; McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792; Wallace v. County of Stanislaus (2016) 245 Cal.App.4th 109, 123; see also California Government Code §§ 12926.1(b), 12940.

Mr. Winet has also been wrongfully denied payment of his commissions in breach of the Amendment to Offer Letter dated August 8, 2017.  Mr. Winet was provided commissions for selling VEBA to County of San Diego, GUHSD and OUSD.  Mr. Winet should have been receiving commissions for selling VEBA to SDUHSD.  Chamberlain v. Abeles (1948) 88 Cal.App.2d 296-297.  The terms of the Agreement provide that Mr. Winet will receive these commissions for three years from the time the business started.  These commissions abruptly stopped when Mr. Winet was terminated on June 27, 2019.  There is clear documentation that these commissions would continue to be paid for three years, but Gallagher has failed to pay the commissions due and owing to Mr. Winet.  Watson v. Wood Dimension, Inc. (1989) 209 Cal.App.3d 1359; The Colwell Company v. Hubert (1967) 248 Cal.App.2d 567.

Following his wrongful termination, Mr. Winet immediately worked on seeking to mitigate his damages.  Mr. Winet has spoken with no fewer than five potential employers.  Mr. Winet anticipates being offered a new employment position to commence this month.  The job he

Ms. Sandra Gibson
Re: Richard Winet v. Arthur J. Gallagher & Co.
August 9, 2019
Page 5

has been able to obtain will pay him a salary of $85,000 per year, plus commission. Mr. Winet intended to work until the age of at least 70. Therefore, Mr. Winet's loss will be nine years multiplied times $70,000 a year, or $630,000. In addition, Mr. Winet is owed commissions from the date of his termination to the conclusion of the three year payment obligation on the part of Gallagher, which totals $39,350. Attorney fees and costs will also be recoverable pursuant to Government Code § 19965(b).

In light of the foregoing, in lieu of initiating the complaint process and litigation, Mr. Winet will accept $750,000 in satisfaction of his claims against Arthur J. Gallagher & Co.

Please inform us within ten (10) days of the date of this letter if you are agreeable to resolving this matter for the above amount. Thank you for your attention to this matter. If you have any questions, please do not hesitate to contact us.

Sincerely,

WINET PATRICK GAYER
CREIGHTON & HANES

Aaron C. Hanes

ACH:at