1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                  SOUTHERN DISTRICT OF CALIFORNIA

8

9   RICHARD WINET,                        Case No.:  20cv14 W (BGS)

10                         Plaintiff,      **ORDER REGARDING DISCOVERY**
                                           **DISPUTES**
11  v.

12  ARTHUR J. GALLAGHER & CO.,
                                           [ECF 39-40]
13                         Defendant.

14

15

16

## I.      INTRODUCTION

Plaintiff Richard Winet and Defendant Arthur J. Gallagher & Co. ("Gallagher") raised discovery disputes regarding numerous requests for production of documents ("RFPs") and two interrogatories ("ROGs") from Plaintiff to Gallagher.  (ECF 35.)  The Courted order the parties to submit a joint statement addressing the specific issues in dispute.  (ECF 36.)  Further, the parties were ordered to "address the relevancy of the discovery sought and whether the discovery sought is 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely.'"  (*Id.* at 2 (quoting Rule 26(b)(1)).)  Additionally, the parties were ordered to address whether the RFPs and objections to

1

them have complied with Federal Rule of Civil Procedure 34(b)'s requirements.  (*Id.* (citing Fed. R. Civ. P. 34(b)(1) (contents of requests) and (b)(2) (responses and objections).)

The parties filed their respective positions individually.  (*See* Docs. 39 and 40.) The Court addresses and discusses the RFPs, ROGs, and the parties' arguments as necessary in this order, but will not quote the RFP or ROG in dispute.

## II.  DISCUSSION

### A.  Legal Standard

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

Relevant evidence is defined in Federal Rule of Evidence 401 which provides: "[e]vidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020) ("Under Rule 401 of the Federal Rules of Evidence, information having 'any tendency' to make a fact in dispute 'more or less probable' is relevant.") (quoting Fed. R. Evid. 401).  "[I]nformation within [the scope of Rule 26(b)(1)] need not be admissible in evidence to be discoverable."  Rule 26(b)(1); *see also In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial."); *see also Continental Circuits*, 435 F. Supp. 3d at 1018-19 (same).

The Advisory Committee emphasized that in adding the proportionality language to Rule 26(b)(1) "the objective is to guard against redundant or disproportionate

discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse."  Fed. R. Civ. P. 26, Advisory Committee's note to 2015 amendment.  Additionally, under Rule 26(b)(2)(C), a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

### B.    Discovery Requests

#### 1.    Requests for Production of Documents

"A party may serve on any other party a request within the scope of Rule 26(b) to produce any designated documents or electronically stored information."  Rule 34(a)(1)(A).  The request must describe the document sought "with reasonable particularity" and any "objection must state whether any responsive materials are being withheld on the basis of that objection."  Rule 34(b)(2).  The requesting party may move to compel the production of responsive documents if a party fails to produce documents.  Rule 37(a)(3)(B)(iv).

##### a)    RFP No. 2

Plaintiff justifies this RFP by stating his work was sales, and his performance was measured by his sales.  The breach of contract and covenant of good faith and fair dealing claims both allege that Plaintiff was owed commissions from the Grossmont Union High School District ("GUHSD") and Oceanside Unified School District ("OUSD") accounts, which Gallagher did not pay. (Doc. 25 [First Amended Complaint ("FAC")] at 11 and 25).  He also alleges he was owed commissions for the San Dieguito Union High School District ("SDUHSD") account. (*Id.* at 12).  Therefore, the relevance of this RFP would include only those documents that report his sales as that term is defined under the contract.  Gallagher asserts that it has provided documents relating to Plaintiff's sales in its initial disclosures.  (Doc. 40 at 3).  The Court notes that Gallagher has a continuing

obligation to supplement them.  Rule 26(e) (A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."); *City and Cnty. of S.F. v Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003).

Otherwise this RFP is overbroad and not proportional to the needs of the case.  As modified by Plaintiff, this RFP includes all documents, writings, statements, reports, or any other document concerning, evidencing, and reflecting any of Plaintiff's sales.  It fails to specify the particular type of documents that would relate to his sales.  Nor has Plaintiff responded how Gallagher's initial disclosures are inadequate to show Plaintiff's sales.  Without such a response and reasonable specification of what documents Plaintiff still needs, a search for all documents concerning any of Plaintiff's sales would entail undue burden on Gallagher.  It necessarily would include looking for irrelevant and duplicative or cumulative documents.

The Court finds based on the parties' Joint Statements that Gallagher has complied.

### *b)* RFP No. 3

This RFP as modified is the same as RFP 2 except it asks for any work performed whereas RFP 2 asks for any of Plaintiff's sales.  The Plaintiff has alleged his work that is relevant to this case as his sales. "Plaintiff's work was sales… ." (Doc. 39 at 4).  Given his work was sales and this RFP requests any work performed, when appropriately narrowed based on relevance, RFP 3 asks for the same documents as RFP 2.  Additionally, Plaintiff has not indicated in his Joint Statement what "any work performed" means, nor has he proffered how this request is relevant to an important issue in this case.

Based on the FAC, the important issues in the case are the amount of sales for which he was owed commissions as well as his sales performance under the performance

improvement plan ("PIP").  Documents concerning these topics are relevant to his claims for breach of contract and the covenant of good faith and fair dealing, as well as his discrimination and retaliation claims.  However, according to Gallagher, these have already been provided under RFP 2.  Further, "any work performed" is ambiguous and does not provide reasonable particularity.  It is also facially overbroad for the same reasons as stated in RFP 2.

The Court's order in RFP 2 applies equally to RFP 3 in that it covers the relevance and proportionality of the discovery requested herein.  Gallagher need not respond further.

### c)      RFP No. 16

This RFP asks Gallagher to provide how its commission payments are calculated for the sale if its products, including the California School's Voluntary Employee Benefits Association ("VEBA").  Plaintiff asserts this is relevant to commissions he was owed, but not paid. (Doc. 39 at 5).  In his breach of contract claim he alleges that as part of his compensation agreement with McGregor he was to receive a slightly higher annual salary plus commissions of 25 cents per new member per month. (Doc. 25 at 11).  He then goes on to allege that he was terminated, and his commissions owed under his prior agreement were stopped in violation of that agreement. (*Id.*)

The FAC does not claim that his commissions were incorrectly calculated under the agreement with McGregor that allegedly continued with Gallagher.  Therefore, how Gallagher calculates its commissions for other employees is not relevant to any important issue in dispute.  Further, Gallagher indicates it has provided Plaintiff with records as to how his commissions were calculated per his agreement with McGregor. (Doc. 40 at 6). This RFP need not be responded to further.

### d)      RFP No. 17

Plaintiff seeks all documents which reflect revenue generated by his sales.  Plaintiff asserts he was terminated for failure to meet his quarterly sales goals under the PIP.  In his Joint Statement, he claims that his performance was measured by the total revenue his sales

generated. (Doc. 39 at 6).  However, the relevant issue was his failure to meet his sales goals under the PIP, not his failure to generate revenue for Gallagher.  Plaintiff does not proffer any facts which indicate that he was terminated for his failure to generate revenue.  In his FAC, he consistently alleges he is owed commissions due on his sales.  He consistently alleges he was terminated for his inability to meet quarterly sales goals per the PIP plan.  Nowhere in his FAC does he even mention revenue.

Besides not meeting his burden of showing the relevance of this RFP to his claims, it is overbroad and vague.  The term "revenue" and "generated" are not defined. Any attempt to comply with such a broad and ambiguous request is not proportional to important issues in this case and would place an undue burden on the opposing party. This RFP is denied.

### e)      RFP No. 19

RFP 19 seeks all complaints of discrimination received by Gallagher for a six-year period prior to Plaintiff's termination.  Plaintiff's second cause of action alleges discrimination against him based on age and disability under California's Fair Employment and Housing Act. (Doc. 25 at 12-15).  Plaintiff alleges he was discriminated against because of his age and disability by being transferred out of his area of expertise in November 2018. (*Id.* at 13).  Plaintiff further alleges that on April 24, 2019 he was unjustifiably placed on a 90-day PIP by Gallagher. (*Id.* at 8 and 14).  He also alleges that he was terminated on June 27, 2019 by Gallagher for his inability to meet his quarterly sales goals as set for in his PIP. (*Id.*)[1]

---

[1] Plaintiff has not identified who at Gallagher held the discriminatory intent and caused the adverse employment action.  The FAC lists DOES 1-50 because their identities were unknown and states that the FAC will be amended when their identities become known. (Doc. 25 at 3).  Plaintiff has not done so either in his Joint Statement or by way of an amended complaint.

His FEHA discrimination claim alleges disparate treatment by Gallagher and unidentified DOES who were involved in causing the alleged adverse employment actions.[2]  Plaintiff has to prove that the person(s) who caused the alleged adverse actions were substantially motivated by his protected status.[3]  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013).  Therefore, the only relevant discovery within the scope of RFP 19 would be complaints by employees of age or disability discrimination against the person(s) who caused the adverse employment action(s). *See* Fed. R. Evid. 404(b)(2).

RFP 19 fails to meet Rule 34(b)'s requirement to "describe with reasonable particularity" what it seeks.  Plaintiff fails to identify the person(s) who caused the adverse employment actions.  As stated, the only relevant complaints, if they exist at all, would be those regarding the people who caused the adverse employment actions, but because Plaintiff has failed to identify them, the RFP is overbroad and seeking irrelevant discovery.

Notwithstanding, to the extent Plaintiff identifies the person(s) who allegedly caused the adverse employment actions, Gallagher is to provide employee complaints of age and disability discrimination made against these people to the extent any exist.  The Court finds the date range requested to be excessive and limits this inquiry to 3 years prior to June 27, 2019.

### f)      RFP No. 20

RFP 20 requests all harassment complaints for six years prior to Plaintiff's termination.  Plaintiff's second cause of action alleges a violation of FEHA § 12940(j),

---

[2] This would include others who satisfy the cat's paw rule. *See Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95, 100 (2004); Judicial Council of California Civil Jury Instructions ("CACI") 2511.

[3] Section 12940(a) of FEHA requires Plaintiff to prove he was member of a protected class; he suffered an adverse employment action; his membership in the protected class was a substantial motivating reason for defendant's adverse action; and plaintiff was harmed and defendant's conduct was the substantial cause thereof.

for hostile work environment harassment.  The elements of this cause of action require Plaintiff to prove that as an employee he was subjected to unwanted harassing conduct because of his age or disability; that said conduct was so severe and pervasive that a reasonable person, and the plaintiff, considered the work environment to be hostile or abusive; that the supervisor either engaged in the conduct or knew or should've known of the conduct but failed to take immediate and corrective action; and the harassing conduct was a substantial factor in causing his harm.  *See* CACI 2521A.

Harassment is distinguishable from discrimination under FEHA. "Discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 869 (2014) (citations omitted).  Harassing conduct includes verbal harassment, such as obscene language or demeaning comments.  *See* CACI 2523.  It also can involve unwanted touching, offensive posters or cartoons.  *Id.*  Of significance, the conduct must be severe and pervasive.  *See* CACI 2524.

In RFP 20, Plaintiff wants 6 years of complaints of harassment.  The Court has reviewed the general allegations in the FAC along with the allegations in the second cause of action. (Doc. 25 at 3-10, 12-16).  Nowhere in the FAC does Plaintiff describe what discriminatory harassing conduct he was subjected to and by whom.  The relevance of complaints of harassment only concern the employee(s) and/or supervisor(s) who Plaintiff alleges did the harassing.  RFP 20 is thusly deficient in that it fails to identify who are his alleged harassers.  Further, in that Plaintiff fails to provide any facts indicating he was actually harassed due to his age and disability, his request for complaints of harassment are collateral and not proportional to important issues in the case.  Gallagher need not respond.

### g)   RFP 21

Similar to RFPs 19 and 20, RFP 21 requests all complaints of retaliation received by Gallagher for six years prior to Plaintiff's termination.  Plaintiff's fourth cause of

action alleges retaliation in violation of Labor Code section 1102.5, commonly referred to as Whistleblower Protection.  *See* CACI 2730.

Section 1102.5 prohibits termination of an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 933 (2007) (quoting § 1102.5(b), (d), (e)).  To prevail the Plaintiff has to prove: he was an employee who was engaged in a protected activity, *i.e.* disclosure of a violation or noncompliance with any federal or state statute, rule or regulation or the employer believed he might disclose the violation to a government agency or law enforcement; the employer retaliated against the employee for the disclosure to a public agency; the employee's disclosure of information was a contributing factor in the employer's adverse employment action; and the employer's conduct was a substantial factor in causing the employee's harm. CACI 2730.

The FAC alleges Gallagher retaliated against him for objecting to their failure to uphold the terms of his compensation agreement and the misappropriation of his commissions to another employee. (Doc. 5 at 17).  Plaintiff alleges this conduct was illegal. However, Plaintiff does not identify in his FAC or in his Joint Motion what violation of state or federal law he claims Gallagher violated, nor does he identify to which public agency he intended to report this alleged illegal conduct.  He also does not identify the person(s) who retaliated against him by transferring him away from his department, placing him on the PIP plan, and terminating him.[4]  Like RFP 19 and 20, RFP 21 requests 6 years of complaints of retaliation.

---

[4] Plaintiff alleges Gallagher caused the same adverse employment actions in both his FEHA discrimination claim and this retaliation claim. In other words, the people who caused these adverse employment actions were motivated by both discriminatory intents based on age and disability, as well as retaliatory intent.  Plaintiff has not proffered facts

1    RFP 21 is overbroad in that it could include both FEHA and Whistleblower

2   retaliation complaints.  *See Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App.

3   4th 1378, 1386 (2005) ("[U]nder FEHA it is unlawful '[f]or any employer ... to

4   discharge, expel, or otherwise discriminate against any person because the person has

5   opposed any practices forbidden under the FEHA or because the person has filed a

6   complaint ... under this Act.' [and] under Labor Code section 1102.5, subdivision (b), an

7   employer may not 'retaliate against an employee for disclosing information to a

8   government ... agency, where the employee has reasonable cause to believe that the

9   information discloses a violation of state or federal statute.'") (citations omitted) (quoting

10  Cal. Gov. Code, § 12940(h) and Cal. Labor Code § 1102.5(b)).

11    Not only does Plaintiff fail to specify under which statute he seeks this discovery,

12  he also does not explain how this discovery is relevant to his Whistleblower claim.  He

13  cites *Sallis v. University of Minnesota*, 408 F.3d 470, 478 (8th Cir. 2005) to support RFPs

14  19-21, but that case does not stand for the proposition that a plaintiff is entitled to six

15  years' worth of complaints anywhere at the company and as to anyone.  That court found

16  that courts "have limited the discovery of company records to the local facility where

17  plaintiff was employed, where there is no showing of the need for regional or nationwide

18  discovery." *Id.* at 478 (citing *Carman v. McDonnell Douglas Corp.,* 114 F.3d 790, 792

19  (8th Cir.1997).  As noted in *Sallis*, the *Carman* court found "[c]ompanywide statistics are

20  usually not helpful in establishing pretext in an employment discrimination case, because

21  those who make employment decisions vary across divisions." *Id.* (quoting *Carman*, 114

22  F.3d at 792).  Sallis' discovery requests were significantly limited because they were

23  found overbroad and unduly burdensome.  *Id.*  Sallis' requests sought university-wide

24  complaints for ten years when Sallis' had worked in a single division for ten years and his

25

26  _____

27

28  substantiating his claim that these adverse actions were substantially motivated by his
    age, disability, or whistleblower retaliation.

allegations were related to supervisors in that division. *Id.* Discovery was limited to his single division and to complaints filed no more than one year prior.

Based on the reasoning of *Sallis*, RFP 21 is similarly overbroad in that it requests all complaints of retaliation received by Gallagher for 6 years prior to June 27, 2019. Even if narrowed to include retaliation complaints under the Whistleblower and FEHA statutes, and further limited to Plaintiff's place of employment, it would still suffer from lack of reasonable particularity. The only relevant evidence of prior complaints of retaliation would be those directed at Gallagher employees who made the adverse employment decisions as to Plaintiff. RFP 21 asks for all complaints of retaliation, which necessarily includes people who were not involved in the adverse employment action decisions as to Plaintiff.

The Court also denies RFP 21 because the relevance is minimal given that retaliation claims are generally fact specific.

> Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.

*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1052 (2005). RFP 21 encompasses irrelevant collateral information.

As detailed above, his Whistleblower Protection claim appears to allege a contract dispute is the protected activity, which by definition is not a legal violation as required. The FAC does not explain how Plaintiff was going to "blow the whistle" by reporting this contract dispute to a public agency. Further, there are no facts to support the bald allegation that he was terminated for disclosing protected information to a public agency. Given these limitations, Plaintiff's RFP is more akin to a fishing expedition that in effect

would create an undue burden on Gallagher.  RFP 21 is not proportional to the needs of the case under Rule 26(b)(1).

### h)  RFP Nos. 24-27

Plaintiff requests all documents, including emails regarding any communications of 19 employees of McGregor and Gallagher with the Plaintiff and which concerned the Plaintiff.  Plaintiff contends these are relevant because Gallagher alleges Plaintiff was having inappropriate conduct with clients, Plaintiff was not conducting sufficient work for Gallagher, and communication via emails related to Plaintiff's work performance, sales, client contact, and direction provided by supervisors. (Doc. 39 at 7-8).

First, the Court finds that these RFPs are facially overbroad in that they include any communications, which would necessarily include topics that are not relevant to any material issues.  Therefore, to search for them would not be proportional to the needs of the case and would create an undue burden on Gallagher. (*See* Doc. 40 at 9).

Plaintiff identifies two reasons Gallagher claimed he was being put on the PIP, Plaintiff using the name of a CSO as a sales lead and Gallagher claimed Plaintiff's sales activity needed to improve. (FAC ¶ 29.)  If Plaintiff is contending that the use of the CSO's name and poor sales activity were pretext to put him on the PIP, then the only relevant communications under this narrowed topic would be emails regarding Plaintiff's use of this CSO's name, emails regarding sales goals under the PIP, and emails about him being placed on the PIP plan and his compliance with it.  Doing sufficient work is overboard, ambiguous, and not relevant unless it is narrowed.  Additionally, emails from 19 people's email accounts is still overbroad.  Plaintiff has not identified who placed him on the PIP, therefore the RFPs also lack reasonable particularity.  To the extent Plaintiff or Gallagher identifies who placed him on the PIP, the Court will allow limited discovery on these topics but the scope must be limited to communications between Plaintiff and the PIP decision maker(s), and communications by or between the decision maker(s)

themselves regarding Plaintiff's allegedly inappropriate name use, his being placed on the PIP plan, and about him meeting or not meeting his sales goals.[5]

Apart from the limited discovery as narrowed by the Court, these RFPs are facially overbroad, not proportional to the important issues in the case and unduly burdensome to Gallagher.[6] The parties are to follow their agreed upon ESI procedures as regards search terms. (Doc. 13 at 4-6).

### i)   RFP No. 28

Plaintiff is requesting "any communication and emails related to the closing of the sale of VEBA product to SDUHS." (Doc. 39 at 10). As to relevance, he claims that he was wrongfully denied earned commissions for his sales. In this RFP he identifies the sale of VEBA products to SDUHS for which he claims he is entitled to commissions. (Doc. 39 at 9).

First, Plaintiff fails to address how any communication related to the sale of these products has a tendency to make a fact more or less probable than it would be without the evidence and how determination of the fact is of consequence in determining the action. Fed. R. Evid. 401. To the extent he is asking for discovery as to his closed sales and his earned commissions due, the Court has decided this issue. (*See* RFPs 2 and 16). Apart from commissions due for his closed sales, Plaintiff has not specified what fact of consequence these emails would have a tendency to prove.

Although not addressed by Plaintiff in support, his breach of contract cause of action refers to his being entitled to the commission for the SDUHSD account because he was instrumental in securing the business for Gallagher in September of 2018. The

---

[5] Gallagher has proffered that of the 19 employees listed by Plaintiff, only two were Plaintiff's supervisors. The Court limits this order to these two supervisors. If others terminated Plaintiff for lack of sales, then they are also included in this order. Further, the Parties are to search following their protocol (Doc. 13 at 4) and the terms should be consistent with this order.

[6] The Court adopts Gallagher's undue burden proffer. (*See* Doc. 40 at 9).

account had an effective date of January 1, 2019. (Doc. 25 at 12).  It appears Plaintiff is alleging that even though he did not close the deal, since he established a relationship with key personnel at SDUHSD, and continued to contact them, he should be entitled to the commission for this account. (*See id.* at 25).

This allegation concerns what constitutes a sale under the contract(s) he signed with Gallagher for which he would be entitled to commissions.  In his FAC he identifies his contract with McGregor that covered commissions for his sales. (Doc. 11 at 30). However, Plaintiff has not identified the provisions of the contract that define what constitutes a sale. He does not explain how emails regarding the sale of these VEBA products to this SDUHS go to prove or disprove whether he should be credited for this sale as that term is defined under the contract(s) he signed. Plaintiff fails to meet his burden to show relevancy.

Apart from his failure to show the discovery sought is relevant, the Court denies this RFP as being overbroad and not proportional to this case.  This RFP is facially overbroad. It includes any communications between unidentified persons over an undefined time frame relating to the closing sale of VEBA products. And given the Court's order regarding RFPs 2 and 16, such discovery would be unreasonably duplicative and cumulative.  Finally, it would also place an undue burden on Gallagher.[7]  For these reasons RFP 28 is denied. "District courts have broad discretion in controlling discovery" and "in determining relevancy."  *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

///

///

---

[7] The Court adopts Gallagher's proffer on this issue in its Joint Statement. (Doc. 40 at 11).

### *j)* **RFP No. 29**

This RFP is denied for the same reasons given in the denial of RFP 28.

### *k)* **RFP No. 35**

RFP 35 requests all documents related to any sales made by Gallagher to any potential clients identified by Plaintiff as of his termination.  It appears Plaintiff is arguing this is relevant because he should be credited for commission purposes.  He has not cited to any contract provision which regards what constitutes such a sale. From Plaintiff's allegations in his breach of contract claim, as addressed in RFP No. 28, it appears Plaintiff alleges he is entitled to commissions for sales made by Gallagher but which were referred by Plaintiff.  Assuming relevancy, from their Joint Statements Plaintiff has narrowed this RFP to which Gallagher has agreed. (Doc. 39 at 11-12; Doc. 40 at 13).  Gallagher requests this RFP be under a protective order. Plaintiff has not addressed this issue. Notwithstanding, both parties have already agreed to a stipulated protective order which would cover Gallagher's concerns. (*See* Doc. 13 at 3). Therefore, the Court orders the parties to abide by their joint discovery plan as regards this stipulated protective order. Further, in that Gallagher agrees to respond to Plaintiff's modified RFP, the Court orders Gallagher to respond to this RFP as modified by Plaintiff.

### 2. **Interrogatories**

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3).  "The grounds for objecting to an interrogatory must be stated with specificity."  Rule 33(b)(4).  The party propounding the interrogatory may move to compel an answer if the party fails to answer.  Rule 37(a)(3)(B)(iii).

### *a)* **ROGS Nos. 2-3**

Both of these ROGs request the total amount of revenue generated from sales made by Gallagher. Plaintiff asserts that these ROGs are clearly relevant because he claims he was denied commissions from his sales. He also states he was terminated for his failure to

generate sales and revenue. (Doc. 39 at 13). Of note, Plaintiff does not proffer facts which indicate that he was terminated for his failure to generate revenue. In his FAC he consistently alleges he is owed commissions due on his sales. Further, he consistently alleges he was terminated for his inability to meet quarterly sales goals per the PIP plan. No where in his FAC does he even mention revenue.

Besides not meeting his burden of showing the relevance of these ROGs the term "revenue" and "generated" are not defined. In this aspect they are vague and could include collateral and irrelevant discovery.  The Court otherwise adopts its order for RFP 17.

### C.    Privilege Log

Plaintiff requests Gallagher provide a privilege log. (Doc. 39 at 14). Gallagher does not address the issue. The Court refers the parties to their discovery plan regarding their agreement for issues regarding claims of privilege. (Doc. 13 at 6). The parties are ordered to comply by their agreement.  To the extent they cannot resolve the matter, then they should follow the Chambers Rules.

## III.    CONCLUSION

The parties' discovery disputes are resolved as set forth above.  Where the Court has ordered Gallagher to respond further, responses and responsive documents must be provided by **November 17, 2020**.

**IT IS SO ORDERED.**

Dated:  November 3, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge